**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

NOELLE B. DOUGLAS,
          Appellant,

       v.

DEPARTMENT OF JUSTICE,
          Agency.

DOCKET NUMBER
DC-0752-17-0130-I-1

DATE: November 10, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Lawrence Berger, Esquire, Glen Cove, New York, for the appellant.

Margo L. Chan, Esquire, and Susan E. Gibson, Esquire, Washington, D.C.,
    for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 7-day suspension. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  Except as expressly MODIFIED to correct a statement by the administrative judge in addressing the penalty determination, we AFFIRM the initial decision.

## BACKGROUND

¶2     On October 21, 2016, the agency removed the appellant from her Chief Investigator position with the Justice Prisoner and Alien Transport System of the agency's U.S. Marshals Service.  Initial Appeal File (IAF), Tab 6 at 7.  The appellant received a proposal notice stating that the agency's Office of Professional Responsibility, Internal Affairs (OPR-IA) investigated an allegation that she misused her position by having a subordinate employee, a Management and Program Analyst (MPA), assist in preparing her Senior Executive Service (SES) application package and that her removal was proposed based on two charges:  (1) misuse of position (two specifications); and (2) lack of candor (four specifications).  *Id*. at 134-45.  The deciding official subsequently found that the evidence supported both charges (but not Specification B of charge 2),[2] and thus, she sustained the charges and found the penalty of removal appropriate.  *Id*. at 8-13.

---

[2] Because the deciding official did not sustain Specification B of charge 2, the administrative judge did not address it.

¶3　　On appeal, the administrative judge sustained both specifications of charge 1.  IAF, Tab 31, Initial Decision (ID) at 2-8.  However, because the administrative judge found that the agency failed to present preponderant evidence to support any of the three specifications of charge 2, lack of candor, the second charge was not sustained.  ID at 8-14.  Based on the evidence as a whole, including the deciding official's proper consideration of the *Douglas* factors[3] and her testimony that charge 1, standing alone, would warrant a maximum penalty of a 7-day suspension, the administrative judge mitigated the agency's removal penalty to a 7-day suspension.  ID at 16.

¶4　　The agency has filed a petition for review.[4]  Petition for Review (PFR) File, Tab 1.  The appellant has filed a response, and the agency has filed a reply to the appellant's response.  PFR File, Tabs 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge correctly found that the agency did not present preponderant evidence to support Specification A of the lack of candor charge.</u>

¶5　　Specification A of the agency's lack of candor charge, referring to the MPA's contribution to the SES package, states the following:  "You displayed a lack of candor on February 17, 2016, during your sworn OPR-IA interview, when you stated in part; '. . . *Let me put this very clearly on the record.  I did not use what [the MPA] wrote or provided.*'"  IAF, Tab 6 at 137 (italics in the original).

---

[3] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board established criteria that deciding officials must consider in determining the appropriate penalty to impose for acts of misconduct by Federal employees.

[4] With its petition for review, the agency submitted an interim relief certification stating that the appellant was restored to her former position.  PFR File, Tab 1 at 284-85.  The agency also submitted a Standard Form 52 and a document from the National Finance Center database showing that the appellant was restored to her former position, effective March 27, 2017.  *Id.* at 286-89.  The appellant has not raised any issues of noncompliance with the interim relief order.  In any case, given our disposition of this appeal in favor of the appellant, the issue of the agency's compliance with the interim relief order is now moot.  *See Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶ 3 n.1 (2012).

¶6      On review, the agency contends that the administrative judge erroneously characterized Specification A of the lack of candor charge and as a result did not properly weigh the evidence. PFR File, Tab 1 at 10-12. Specifically, the agency argues that the appellant "used what [the MPA] wrote and sent her" in her SES application. *Id*. The agency asserts that, because the appellant denied using anything the MPA wrote, and the evidence shows that there are common words between what the MPA wrote and what the appellant submitted in her SES application, the agency presented sufficient evidence to prove the charge. The agency also argues that the administrative judge erred by expanding his analysis to address who "authored" the appellant's entire SES package. *Id*. at 12.

¶7      Lack of candor and falsification are different, although related, forms of misconduct, and the latter is not a necessary element of the former; thus, lack of candor is a more flexible charge that need not require proof of intent to deceive. *Ludlum v. Department of Justice*, 278 F.3d 1280, 1283-84 (Fed. Cir. 2002). Nevertheless, lack of candor "necessarily involves an element of deception" and requires proof that: (1) the employee gave incorrect or incomplete information; and (2) she did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016).

¶8      Here, the administrative judge found that the appellant's testimony was more credible than the MPA's testimony. ID at 9-11. In particular, the administrative judge found that the OPR-IA interview occurred almost 2 years after the appellant submitted her SES application and that the appellant credibly testified that she had no deceptive intent and had not known that her statement to the investigators was inaccurate or untrue. ID at 9. The administrative judge found further that, "although the agency combed through the application, it could identify only a few, very few, phrases [in] common" between what the MPA claims she wrote and the application submitted by the appellant. ID at 11. The administrative judge credited the appellant's explanation that, even though some of the words may have been the same, it was not surprising given the nature of

the application.  *Id*.  The administrative judge also credited the appellant's testimony that the structure of her sentences and the focus of her message were different than the MPA's draft and that she had created or "authored" the application.  *Id*.  Based on his review of the evidence and his credibility determinations, the administrative judge specifically found that the agency failed to present preponderant evidence showing that:  (1) what the appellant told the investigators was incomplete or inaccurate; and (2) she had any knowledge or belief that her response was in any way inaccurate.  ID at 11-12.

¶9      It is well established that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so.  *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002); *see Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (clarifying that "[e]ven if demeanor is not explicitly discussed, assessing a witness's credibility involves consideration of various factors, including a witness's demeanor").  Here, the administrative judge thoroughly reviewed the hearing testimony and found credible the appellant's testimony that she had no deceptive intent and that she believed that her statement to the investigators was accurate and true.  ID at 9-11.  Although the administrative judge did not cite the Board's decision in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), we nonetheless find that he conducted a proper analysis required under *Hillen* in making his credibility determinations.[5]  ID at 9-12.  Based on our

---

[5] To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as:  (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency

review of the record, including the hearing testimony, we see no basis upon which to disturb the administrative judge's credibility determinations in this regard. Nor do we find any basis upon which to disturb the administrative judge's conclusion that the agency failed to prove Specification A of the lack of candor charge. *See Fargnoli*, 123 M.S.P.R. 330, ¶ 17.

The administrative judge correctly found that the agency did not present sufficient evidence to support Specification C of the lack of candor charge.

¶10 Specification C of the lack of candor charge states the following: "You displayed a lack of candor on February 17, 2016, during your sworn OPR-IA interview, when you minimized the extent of [the MPA's] role in assisting you with your SES promotion package." IAF, Tab 6 at 138. The proposal notice quotes the appellant's assertion that the MPA's role was "simply a second set of eyes" to review her application and see if "anything pops out," while pointing out that the appellant sent numerous emails and documents to the MPA for her to incorporate into the appellant's SES application. *Id.*

¶11 On review, the agency asserts that the administrative judge mischaracterized Specification C as requiring the agency to have to prove that the MPA "substantively contributed" to the appellant's SES application package and that the administrative judge "did not give the proper weight to the voluminous emails exchanged" between the appellant and the MPA during that time. PFR File, Tab 1 at 12-15. The agency also contends that the appellant's statement—that the MPA took her request to act as a second set of eyes differently than what the appellant intended and that the MPA, on her "own accord," went "high and left" on this—shows that the appellant knew about the MPA's "extreme" level of involvement in preparing her SES application. PFR File, Tab 1 at 12-13; ID at 12; IAF, Tab 8 at 56, 58-59; Hearing Transcript (HT) at 170-71 (testimony of

---

with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen*, 35 M.S.P.R. at 458.

the appellant); Hearing CD 1, Track 1 (testimony of the appellant).[6]  The agency contends, moreover, that the many emails the appellant sent to the MPA and their frequent telephone calls demonstrate that the appellant knew that the MPA's assistance on the SES package was more than merely a "second set of eyes."  PFR File, Tab 1 at 12-13.

¶12      The administrative judge found that the MPA "really had little or no substantive contribution to the SES application package."  ID at 12.  In support, the administrative judge found that the appellant credibly testified that she considered the MPA's involvement to be nothing more than a "second set of eyes" in reviewing her application package because her previous SES application, done without the MPA's assistance, was "good enough to get [her] in the door" for an interview.  ID at 12.  The administrative judge likewise questioned the "plausibility" of the MPA's "adamant claim that she devoted all her time, both official and a significant portion of her private time for weeks," to creating the appellant's SES application and found it "inherently implausible that it was her total and exclusive activity for days on end as she claimed."  ID at 11.  The administrative judge also observed that the MPA appeared to be exaggerating her role in assisting the appellant as revenge against the appellant because she changed the MPA's flexible work schedule and that the many emails and telephone calls seem to have resulted from the MPA's "intrusive, hyper-sensitive distraction[s]" while involved in the endeavor and the MPA's strategic maneuvering "to attack" the appellant and position herself as a victim.[7]  ID at 12-13.  In light of such testimony, the administrative judge stated that he

_____

[6] A copy of the hearing transcript is in the file below and the agency submitted another copy with its petition for review.  The record below contains a copy of the hearing CD.

[7] The record reflects that, while assisting with the appellant's SES application, the MPA had a very lax and informal telecommuting work arrangement that included little supervisory oversight and no required days in the office or official core work hours.  IAF, Tab 7 at 39-30, Tab 8 at 15-25, 56-57, 68, 86-89, 94-95.  Because the other employees were not allowed to telework, the MPA's flexible telework arrangement became an issue within the office and was subsequently changed by the appellant.  *Id*.

moderated the weight he assigned to the MPA's testimony. *Id*. The administrative judge concluded that the appellant's testimony—recalling that the MPA had little to no substantive contribution to the SES package, rendered almost 2 years after the SES application was created—was more credible than the MPA's testimony. ID at 12.

¶13    Similar to our reasoning above regarding Specification A, proving that the appellant knowingly gave incorrect or incomplete information during the OPR-IA interview turns on the credibility of the witnesses. Here, the administrative judge found credible the appellant's testimony that she had no deceptive intent and that she had not known that her statement to the investigators—concerning the extent of the MPA's role in assisting her with the SES application—was inaccurate or untrue. ID at 12-13; *see Fargnoli*, 123 M.S.P.R. 330, ¶ 17 (indicating what an agency must do to prove a lack of candor charge). As stated above, we will defer to credibility determinations when they are based on an administrative judge's observing the demeanor of witnesses testifying at a hearing. *Haebe*, 288 F.3d at 1301. We find that the agency's assertions regarding credibility fail to provide "sufficiently sound" reasons for granting review because they constitute mere disagreement with the administrative judge's determinations and fact findings. *Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶¶ 38-39 (2017); *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding that the Board will defer to an administrative judge's credibility findings and will not grant a petition for review based on a party's mere disagreement with those findings). Consequently, we agree with the administrative judge that the agency failed to prove Specification C because the agency failed to establish that the appellant minimized the extent of the MPA's role in assisting the appellant with the SES promotion package.

<u>The agency did not present preponderant evidence to support Specification D of the lack of candor charge.</u>

¶14    Specification D charges the following:  "You displayed a lack of candor on February 17, 2016, during your sworn OPR-IA interview, when you stated that you did not know if assisting you on your SES promotion package interfered with [the MPA's] official work."  IAF, Tab 6 at 138.  The details of Specification D state that the MPA was communicating with the appellant through numerous "personal conversations, telephone calls, and email exchanges during the day, weekends, and off hours" and that it was "implausible" that the appellant was not aware that the MPA was "spending an inordinate amount of time" on the SES package when she should have been working on official Government business. *Id*. at 138-39.

¶15    On review, the agency contends that the administrative judge erred by not properly weighing the evidence showing that the appellant knew that the MPA was working on her SES application on official work time.  PFR File, Tab 1 at 15-17.  The agency asserts that the dates and times of the numerous email communications reflect that contact between the appellant and the MPA occurred both on and off official duty hours.  The agency also asserts that the appellant testified that the MPA's supervisor advised her that the MPA worked on the SES package during official hours; that she replied that the MPA should not be using official time; and that she did not tell the MPA not to work on the SES package during official time. *Id*. at 16.  The agency further relies on the MPA's testimony that she considered the SES package to be an official assignment and that the appellant did not discuss with her whether or not to complete the work on official time. *Id*.  The agency contends that the circumstantial evidence thus supports a finding that the agency proved that the appellant knew the MPA's work on her SES application package was performed during official time. *Id*.

¶16    The administrative judge credited the appellant's testimony that she did not know, and that neither the MPA nor the MPA's supervisor told her, that the

MPA's work on the SES application interfered with her official work duties. ID at 13. The administrative judge also considered the appellant's testimony that she believed she instructed the MPA to work on the application only during nonduty hours. ID at 9. Further, the administrative judge explicitly discredited the MPA's "overwrought descriptions of exclusive self-sacrificing consecration to the appellant's cause" and determined that the MPA's "choice to wholly commit virtually every waking minute to the appellant's cause was . . . quite understandably, unknown to the appellant." *Id*. In addition, the administrative judge discussed the testimony of an agency Information Technology Specialist who stated that the MPA told her that she had written the appellant's Executive Core Qualifications during evenings when the MPA was off work. ID at 10. The administrative judge found the evidence of record consistent with the appellant's statement that she did not know if the MPA's work on her SES application package interfered with the MPA's official work. *Id*.

¶17     We find that the administrative judge thoroughly addressed the credibility issues necessary to determine whether the appellant lacked candor when she stated that she did not know whether assisting with the appellant's SES promotion package interfered with the MPA's official work. ID at 13-14. These findings were implicitly based on the demeanor of the witnesses and are entitled to deference. *Id*.; *see Purifoy*, 838 F.3d at 1373. Further, the administrative judge's conclusion in Specification D was based on the overall evidence and the testimony previously discussed in Specifications A and C of the lack of candor charge. *Id*.

¶18     We conclude that the agency's assertions fail to provide a basis for overturning the administrative judge's credibility determinations and fact findings. *Haebe*, 288 F.3d at 1301. Accordingly, because the agency failed to prove that the appellant knew that her statements during the OPR-IA interview were false, we find no basis upon which to disturb the administrative judge's

determination that the agency failed to prove the charge of lack of candor. *See Fargnoli*, 123 M.S.P.R. 330, ¶¶ 16-18.

<u>The administrative judge appropriately mitigated the removal penalty to a 7-day suspension.</u>

¶19    On review, the agency argues that the administrative judge erred by failing "to reference or consider Appellant's prior disciplinary record, which included recent serious sustained charges" in his penalty analysis when he mitigated the removal to a 7-day suspension. PFR File, Tab 1 at 18. Specifically, the agency asserts that the administrative judge ignored an "intervening" disciplinary action that occurred after the proposal notice but before the issued decision of removal, which consisted of sustained charges for similar misconduct and resulted in the appellant accepting, pursuant to a settlement agreement, a demotion from an SES to a GS-15 position and a 15-day suspension. *Id*. at 6, 18-21. The agency thus contends that the administrative judge inaccurately portrayed the deciding official's testimony as stating that the appellant had no prior discipline. *Id*. at 18.

¶20    The deciding official, while aware of the intervening discipline, did not consider it to be a prior discipline or an aggravating factor. Rather, she testified that the appellant "did not have any prior formal discipline," and she clarified that when the appellant made "her oral reply [to the proposed removal], she had been demoted and reassigned to another position—to a lower position so even though that disciplinary [action occurred] after the instant offense [at issue in this appeal], it's still part of the record." HT at 198 (testimony of the deciding official). The administrative judge specifically questioned the deciding official about the intervening discipline and asked what, if any, impact knowing about the appellant's demotion had on the deciding official and how it affected her penalty determination. *Id*. (question of the administrative judge). The deciding official testified that she found the appellant's "prior record . . . showed a pattern of behavior, but it had nothing to do with the prior discipline." HT at 198-99 (testimony of the deciding official).

¶21     Although the proposal notice advised the appellant that the proposing official considered the appellant's intervening demotion to "show a pattern of unethical behavior," the deciding official's testimony reflects that she did not rely upon it as an aggravating factor and that she considered it only in relation to the appellant's potential for rehabilitation.  HT at 199, 210-11.  We find no error by the administrative judge in not considering the intervening discipline as an aggravating factor.

¶22     To the extent the agency may be asserting that the administrative judge confused the timing of an oral admonishment the appellant received in 2011 for the intervening discipline of a demotion and 15-day suspension, we agree.  PFR, Tab 1 at 18.  The administrative judge incorrectly stated that the deciding official "commented that after the proposal notice, but before the issued decision of removal, the appellant had received an oral admonishment."  ID at 15.  The administrative judge must have been referring to the demotion and reassignment, not the oral admonishment.  Nevertheless, because the administrative judge correctly found that the deciding official did not consider the intervening discipline to be an aggravating factor, ID at 15; HT at 181-82, 198-99, we find that this adjudicatory error did not prejudice the appellant's substantive rights. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

¶23     Finally, the agency argues that the appellant's overall work record, including the demotion and 15-day suspension, supports the removal penalty for a single charge of misuse of position.  PFR File, Tab 1 at 21-22.  The agency also argues that because the appellant received an oral admonishment in 2011 for misuse of position, this was not her first offense.

¶24     When, as here, the Board sustains fewer than all of the agency's charges, it may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either a final decision or in proceedings before the Board that a lesser penalty be imposed on fewer charges.  *George v. Department of the Army*, 104 M.S.P.R. 596, ¶ 10 (2007), *aff'd*, 263 F. App'x 889 (Fed. Cir.

2008). In this case, the administrative judge correctly found that the deciding official testified that the appellant had no prior discipline and that the penalty for a misuse of position charge ranged from a reprimand to a 7-day suspension for a first offense. HT at 206. Moreover, the deciding official, who was aware of the 2011 oral admonishment as well as the intervening demotion and 15-day suspension, explicitly testified that, if she had not sustained the lack of candor charge, she would not have removed the appellant for a sustained charge of misuse of position. HT at 214 (testimony of the deciding official). Thus, we find that in assessing the penalty, the administrative judge deferred to the deciding official's testimony that she would not have removed the appellant and that the maximum penalty for a first offense of misuse of position was a 7-day suspension. *See generally Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999) (holding that, if fewer than all of the charges are sustained and the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges, the Board may mitigate the agency's penalty to the maximum reasonable penalty). Despite the agency's argument on review that the removal penalty is warranted based on the appellant's intervening discipline, as we stated above, the deciding official was fully aware of this discipline, and she testified that she did not rely on it as an aggravating factor. In addition, the oral admonishment, which is an informal action and usually constitutes the first step in progressive discipline, although notifying the appellant that her misuse of position in the future could be cause for discipline, could not be considered a prior disciplinary offense or infraction when assessing the penalty here. Therefore, we sustain the penalty determination. Accordingly, we affirm the initial decision as modified herein.

## ORDER

We ORDER the agency to cancel the removal and substitute a 7-day suspension without pay, and to restore the appellant effective October 21, 2016.

*See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶26 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶27 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* [5 C.F.R. § 1201.181](#)(b).

¶28 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  [5 C.F.R. § 1201.182](#)(a).

¶29 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                         /s/ for
                                      _____
                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.